

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 JUL -2 PM 4: 41

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:15-CR-045 |
| | § | |
| CHRISTINE NICHOLE ESTRADA | § | |

## REPORT AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the Court is defendant Christine Nichole Estrada's Second Amended Motion to Suppress filed May 27, 2015 (document 21). On June 17, 2015, a hearing on the motion was held. Defendant was present at the hearing and was represented by retained counsel Mr. R. Walton Weaver. Assistant United States Attorney Mr. Timothy Hammer was present for the government. Based on the pleadings filed and the evidence presented at the hearing, the undersigned recommends the Motion to Suppress be GRANTED in part and DENIED in part.

### I.
### FACTUAL BACKGROUND

In the Spring of 2013, Texas Department of Public Safety (DPS) Criminal Investigation Division (CID) Agent Jason Lindley received information from a cooperating individual (CI) implicating defendant ESTRADA, along with her husband, in methamphetamine distribution. On November 7, 2013, the CI again contacted Agent Lindley telling him a person referred to as J.T. had been arrested for possession of methamphetamine. Agent Lindley interviewed J.T. at the Randall County jail and learned from J.T. that defendant ESTRADA was the person supplying J.T. with the drugs. J.T. further stated that the defendant's address was on North La Salle street and that she

almost always drove a black Escalade when he met her to purchase drugs. Agent Lindley testified

he drove to North La Salle street and he spotted two vehicles in front of 130 North La Salle, one

being a black Escalade which matched the description provided by J.T. A vehicle registration check

showed the Escalade was registered to defendant CHRISTINE ESTRADA.

That same date, November 7, 2013, Agent Lindley presented to a state court district judge

an Affidavit for the Installation and Use of a Mobile Tracking Device Pursuant to Article 18.21 §14,

Texas Code of Criminal Procedure. The Texas Code of Criminal Procedure authorized issuance of

a tracking device based upon a showing of reasonable suspicion. The state district judge signed an

Order authorizing installation of the tracking device and using it for 90 days finding reasonable

suspicion. In the early morning hours of November 8, 2013, Agent Lindley placed the tracking

device on defendant's Escalade at her residence. During the period from November 8, 2013 to

November 16, 2013, Agent Lindley created tracking device reports, but, in an effort to reserve

battery power, configured the reports to only show where the vehicle stopped for more than 2

minutes. The tracking device reports during this period showed multiple Amarillo addresses

including defendant ESTRADA's home address, 130 North La Salle, and 19 "hits" on North Lake

street, 6 of which were for an address at 2407 North Lake. (Government's Exhibit 2).

Starting on November 18, 2013, Agent Lindley testified he began a visual surveillance of the

defendant. Agent Lindley stated he followed the defendant from her residence to a house located

at 2407 North Lake. He observed her go inside that house for approximately 10 to 15 minutes, and

then he followed her to the parking lot of a fast food restaurant. There another vehicle pulled side

by side with defendant's vehicle for a very brief period and although he did not specifically see what

happened, Agent Lindley believed he was witnessing a drug transaction. When he ran the license

Estrada45.GPSDNY;1

tag of the other vehicle, it returned to J.T.

On November 20, 2013, this time with the assistance of other law enforcement agents, Agent Lindley repeated his surveillance process, following defendant ESTRADA from her house on La Salle to 2407 North Lake where she entered and stayed approximately 10 minutes. Agent Lindley then followed the defendant to the parking lot of a retail business where he observed J.T. exit his vehicle, approach the black Escalade for a few seconds then return to his vehicle. Once defendant ESTRADA drove away, members of Agent Lindley's surveillance team who were assisting him this date, followed defendant ESTRADA to a retail location on South Washington street. At this location upon Agent Lindley's request, Special Agent Chris Ecker approached defendant ESTRADA and asked her if she would remain at the location until Agent Lindley could get there. Agent Lindley testified defendant ESTRADA voluntarily waited to speak with him and that she was free to leave at that point in time.

Meanwhile, Agent Lindley approached J.T. who had gotten back into his vehicle. During a discussion, J.T. admitted purchasing drugs from defendant ESTRADA and gave the drugs to Agent Lindley. Agent Lindley read J.T. his Miranda rights and he was arrested. Agent Lindley then went to defendant ESTRADA's location. Once he arrived, Agent Lindley questioned defendant ESTRADA about possessing methamphetamine. Defendant ESTRADA denied possessing methamphetamine but stated she had some marijuana in her purse. Agent Lindley could not recall whether he obtained the marijuana as a result of a search of defendant's purse or as a result of her arrest, but defendant was arrested for marijuana possession and transported to the DPS office.

While defendant was in custody at the DPS office, Agent Lindley conducted an interview with her which he video taped. During the interview, defendant ESTRADA admitted to selling J.T.

methamphetamine on November 18 and 20, 2013. She further stated the drugs belonged to her husband who was in prison. Agent Lindley also found a ZTE cell phone which contained incriminating texts. Defendant ESTRADA denied the phone was hers. Following her arrest, defendant ESTRADA was released on bond. Agent Lindley testified he utilized the tracking device information to create reports for about a week after defendant's release.

Agent Lindley testified he presented a case to the Potter County District Attorney's office on January 7, 2014, implicating defendant ESTRADA in the sale of methamphetamine to J.T. on November 20, 2013. The case was filed and a warrant was issued for defendant's arrest. Defendant ESTRADA was arrested the same date.

Agent Lindley testified he was of the belief that 2407 North Lake was a "stash house." Further, between approximately November 2013 and January 2014, DPS conducted "trash pulls" at that address but these were unsuccessful. Agent Lindley testified he and an Agent Walsmith, on January 8, 2014, decided to visit 2407 North Lake in an attempt to gain consent to search from the occupant with a procedure known as a "knock and talk." Upon arrival at the house, one Patricia Kheweis (hereinafter P.K.) answered the door. Agent Lindley testified P.K. consented to the Agents' entry. When questioned about drugs in the house, P.K. denied there was any methamphetamine, but stated her granddaughter Crystal had some marijuana. As P.K. was showing the officers the various rooms of the house they passed by a room with a closed door. When asked about the room's contents, P.K. stated it contained some of her things. When they passed the closed door a second time, Agent Walsmith asked again about the room's contents. P.K. stated she had some money in there. Agent Walsmith opened the door and saw what appeared to be methamphetamine, money and several safes. After P.K. denied having keys to the safes, Agent Lindley left the North Lake address

to obtain a search warrant because he knew they were going to have to damage the safes to open them.

Upon his return with a search warrant, the safes were opened. The contents included weapons, 600 grams of methamphetamine, LSD tablets, an inert hand grenade, plastic containers with methamphetamine residue, ziploc baggies and a notebook addressed to "blue eyes." According to Agent Lindley, the notebook contained detailed information about methamphetamine processing and sales, information of who owed money and information regarding ammunition. Agent Lindley testified a DPS handwriting expert confirmed the notebook was written by Joel Estrada to the defendant, who is his wife. Additionally, fingerprints of both Joel Estrada and the defendant were found either on the ziploc baggies or the plastic containers.

## II.
## DISCUSSION

Defendant ESTRADA's motion to suppress generally seeks to suppress:

1.    All evidence and statements generated on or after the November 20, 2013 arrest of the defendant (paragraphs a -d);

2.    All information and evidence collected as a result of the tracking device installed without a search warrant (paragraphs e and f); and

3.    All evidence from the warrantless search of the cell phone defendant possessed on November 20, 2013 (paragraph g).

## A.
## GOOD FAITH

At the hearing counsel for defendant focused primarily on the evidence seized from 2407 North Lake arguing it was illegally obtained as a result of the tracking device. As previously discussed, the tracking device was installed on November 8, 2013, upon authorization from a state court district judge based upon reasonable suspicion. DPS-CID Agent Lindley created

reports from this tracking device showing various addresses or range of addresses that were visited by the vehicle over the course of about eight days.  The parties agree that the Supreme Court, in *United States v. Jones*, __U.S. __, 132 S.Ct. 945, 181 L.Ed.2d 191, (2012), determined the attachment of a tracking device to a vehicle is an encroachment of a protected area and constitutes a search requiring a warrant based on probable cause.  *Id*. at 949, 952.[1]   The government argues against suppression of these reports and other evidence resulting from the tracking device contending the agent was acting in "good faith" and was justified in relying on the state district court's authorization order.

"When police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the benefits of exclusion tend to outweigh the costs."  *Davis v. United States*, __U.S. ___, 131 S.Ct. 2419, 2422, 180 L.Ed.2d 285, (2011) citing *Herring v. United States*, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).  Although the evidence here does not show Agent Lindley purposefully or knowingly violated defendant ESTRADA's constitutional rights, the installation of the tracking device without a search warrant, based upon *Jones, supra*, was an unreasonable search in violation of the Fourth Amendment.  Good faith ordinarily applies when the law in effect at the time of a search allowed the search but subsequent case law classified the search as unconstitutional.  Officers who rely on what was binding precedent when conducting a search, will not have such evidence excluded based upon a subsequent change in the law.  *See Davis v. United States*, ___U.S. ___, 131 S.Ct. 2419, 2429, 180 L.Ed.2d 285, (2011).

---

[1]At the hearing the parties indicated the *Jones* decision pre-dated the installation of the tracking device in this case by ten months.  However, *Jones* was decided January 23, 2012, almost twenty-two months before the installation of a tracking device on defendant ESTRADA's vehicle.

Here, the law in effect when the tracking device authorization was obtained and the device was installed required a search warrant. If we consider police misconduct to be defined as a reckless failure to obtain adequate information, suppression must follow. Agent Lindley testified he did not check with a prosecutor or anyone else before obtaining state court authorization to place the GPS device on defendant's vehicle. There has been no showing that exigent circumstances or some other obstacle prevented independent research or obtaining prosecutorial advice. Further, "Responsible law-enforcement officers will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to these rules." *Davis*, 131 S.Ct. at 2429, citing *Hudson v. Michigan*, 547 U.S. 586, 599, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). In other words, law enforcement officials have a duty to stay abreast of current law or at least have a duty to reasonably do so. The failure of the police to be knowledgeable as to the change in the law almost 22 months earlier, disqualifies justification of the installation and use of the tracking device based upon good faith. The tracking device information, in the form of the address reports, violated defendant ESTRADA's Fourth Amendment rights and her motion to suppress this information should be GRANTED. However, this ruling does not extend to the other evidence, including the evidence discovered at 2407 North Lake during the search on January 8, 2014, and that issue is discussed below.

B.
## PROBABLE CAUSE

The government alternatively argues that although the judge authorizing the tracking device order only made a reasonable suspicion finding, the affidavit contained information sufficient to establish probable cause and a search warrant would have been authorized. The facts, however, do not establish probable cause. The affidavit only stated the affiant had

reasonable suspicion that defendant ESTRADA was engaged in criminal activity and the judge

issuing the installation order only found reasonable suspicion. On cross examination, Agent

Lindley testified he could not attest to J.T.'s credibility. When questioned further by the defense,

Agent Lindley admitted he had no contact with J.T., a convicted felon, until November 6, 2013.

While Agent Lindley testified at the hearing that some of J.T.'s information was corroborated by

other information he did not include that fact in his affidavit. As argued by the defense, the

affidavit contains conclusory statements, does not identify J.T. as reliable, and does not rise to

the level of probable cause. For these reasons, the Court finds the tracking device information,

specifically the address reports, should be suppressed and defendant ESTRADA's motion in this

regard should be GRANTED.

## C.
## INDEPENDENT SOURCE

The government next argues the evidence should not be suppressed because an

independent source of information led to the discovery of the inculpatory evidence at 2407 North

Lake. Government's Exhibit #2 from the hearing is a report created by Agent Lindley showing

134 addresses or range of addresses picked up from the tracking device on defendant's vehicle

between November 8, 2013 and November 15, 2013. Of these, nineteen are "hits" in the vicinity

of North Lake street.

Even though the Court has recommended these reports be suppressed, it does not

automatically follow that all evidence obtained during the investigation should also suppressed.

For example, the identity of J.T., any testimony he might provide and the evidence of the

methamphetamine sales from defendant ESTRADA to J.T. on November 18 and 20, 2013 are not

tainted by the Fourth Amendment violation, and should not be suppressed.

Estrada45.GPSDNY:1                            Page 8 of 12

The remaining question is whether the evidence discovered during the search of 2407 North lake on January 8, 2014 constitutes "fruit of the poisonous tree" and should be suppressed. To answer that question the Court must determine whether there was an independent source of information leading to the discovery of the evidence seized at 2407 North Lake. The Court finds there was. Agent Lindley testified that on November 18, 2013, he began visual surveillance of defendant ESTRADA. On that date, he followed the defendant from her residence on La Salle to 2407 North Lake. He witnessed her enter 2407 North Lake and remain inside for ten to fifteen minutes. He then followed her to a business parking lot where she and another vehicle pulled side by side for a short period of time. Although Agent Lindley was not able to see what transpired between the parties, in his opinion the behavior was indicative of a drug transaction. Agent Lindley ran the other vehicle's license plate and it returned to J.T., an individual Agent Lindley knew to be a methamphetamine user. Thereafter, on November 20, 2013, Agent Lindley again conducted visual surveillance. He started at defendant's residence, followed her to 2407 North Lake, watched her go inside for approximately ten minutes and then followed her to a business parking lot. Agent Lindley watched J.T. get out of his vehicle and approach the defendant in her vehicle. After a short period, J.T. returned to his vehicle and defendant ESTRADA drove away. Agent Lindley approached J.T. who was in his (J.T.'s) vehicle and J.T. admitted purchasing methamphetamine from defendant. He turned over the drugs and was arrested.

While Agent Lindley was aware of the tracking device reports when he began to follow defendant ESTRADA on November 18 and 20, 2013, the surveillance on both dates was not aided by the tracking device reports. Instead, the surveillance began at defendant's residence on

La Salle street, an address developed prior to installation of the tracking device.  Agent Lindley did not use the tracking device information to locate the defendant nor did he begin surveillance on North Lake street.

This independent evidence, the surveillance of and following defendant from her residence to 2407 North Lake on not one, but two occasions and then following her to meetings with J.T., an admitted methamphetamine user, was sufficient to establish that the "knock and talk" at 2407 North Lake was based upon Agent Lindley's observations of what he justifiably considered to be criminal activity and was sufficiently independent of the Fourth Amendment violation to avoid suppression.  Although the tracking device information reports showed defendant ESTRADA visited North Lake street on multiple occasions between November 8, 2013 and November 15, 2013, it was the visual surveillance by Agent Lindley that led him to believe 2407 North Lake was a "stash house."  Additionally, he testified at the hearing that without the order authorizing the tracking device, he would have put together a team to conduct visual surveillance of defendant ESTRADA.  Although never directly asked whether he initiated the "knock and talk" at 2407 North Lake based upon the tracking device information or based upon the surveillance conducted November 18 and 20, 2013, there is sufficient evidence before the Court to conclude there was an independent and distinct source of information that led Agent Lindley to go to 2407 North Lake for the "knock and talk."  The motion to suppress the North Lake evidence should be DENIED.

D.
STANDING

The 2407 North Lake property was under the control of a third party, P.K., who consented to the search.  Although this raises an issue of defendant ESTRADA's standing to contest that

search, it is unnecessary to reach the issue of whether defendant ESTRADA has standing because the Court has recommended the North Lake evidence not be suppressed for other reasons. In addition, the defendant has not demonstrated she has standing to object to the seizure of methamphetamine from J.T. on November 20, 2013. The tracking device information has not been shown to have aided in the police decision to approach J.T., gain his admission he purchased drugs from defendant and seize those drugs.

### E.
### CELL PHONE

Defendant has argued the warrantless search of defendant's cell phone violated the holding of *Riley v. California*, ___U.S. ___, 134 S.Ct. 2473, 189 L.Ed.2d 430, (2014). The undersigned does not reach this issue however, because defendant ESTRADA disclaimed ownership of the cell phone thus forfeiting any argument of a Fourth Amendment violation. Even if the defendant had standing, the cell phone appears to have been seized incident to defendant's arrest and Fifth Circuit precedent at that time permitted such search and seizure. *United States v. Mitchell*, 2015 WL 437673 (N.D.TX February 2, 2015) citing *Davis v. United States*, ___U.S. ___, 131 S.Ct. 2419, 2429, 180 L.Ed.2d 285, (2011).

### III.
### RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Suppress filed by defendant CHRISTINE NICHOLE ESTRADA be GRANTED as to the tracking device reports and DENIED as to all other evidence.

IV.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of July 2015.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. This case is set for docket call on July 13, 2015. Consequently, the time in which to file objections is shortened. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is **on or before July 9, 2015**.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).